Leroy **FLAGG**

v.

**CONTROL DATA/e.t. agents supervisor, Kelly Guinan, and manager, Jerry Woods, Human Resource, Kathy Layer.**

**Civ. A. No. 92–2886.**

United States District Court, E.D. Pennsylvania.

Nov. 20, 1992.

Leroy Flagg, pro se.

Jessre R. Ruhl, David F. O'Leary, Rhoads & Sinon, Harrisburg, Pa., for defendants.

## MEMORANDUM

KATZ, District Judge.

This case involves a *pro se* plaintiff who has alleged that his former employer terminated him based solely on plaintiff's race. Plaintiff has brought suit against his former employer and three of the employer's agents asserting violations of Plaintiff's rights under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.;* Title VII, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; the Labor–Management Relations Act, 29 U.S.C. § 185; the first amendment; and the Civil Rights Act of 1991. This court makes the following findings of fact and conclusions of law following a bench trial on all eight of Plaintiff's allegations.

Plaintiff, Leroy Flagg ("Plaintiff" or "Flagg"), a black male, was hired as a field technician by Defendant Control Data Corporation ("Control Data") in June 1990. Control Data, now a division of Automated Wagering International, Inc., supplies com-

puterized lottery terminals to various vendors in Pennsylvania. As a field technician, Flagg was required to travel to various vender locations to service and maintain the lottery terminals. Control Data provided Flagg with a vehicle, the tools and the necessary equipment to maintain and/or service the vehicles. In addition, one qualifications required by all field technicians by Control Data was a valid driver's license. On August 23, 1990 at the beginning of his employment, Flagg signed a "Safe Driver Requirements" agreement; his signature indicated he had read, understood and would abide by the agreement. This agreement established that continued employment with the company depended upon having a valid driver's license, notifying a supervisor of the company if there was any problem with the driver's license, and abiding by all other the terms of the agreement. In the summer of 1991, however, a black male part-time technician had his licensed suspended and the supervisor, "Dave," apparently gave him a bench technician job. At the time Flagg was hired, his immediate supervisor was Dave, a white male. The unit in which Flagg worked employed three part-time technicians and six full-time technicians. Of the full-time technicians, three including Plaintiff were black.

Later in the summer of 1991, Dave was terminated and Defendant Kelly Guinan, a white male, became Flagg's immediate supervisor. On December 10, 1991, Guinan approached the Plaintiff and presented him with a copy of Flagg's Driver Status Report and asked Flagg if his license had been suspended. The Report indicated that Flagg's license had been suspended twice since August 13, 1991: first on August 13, 1991 for failure to pay a fine, which apparently was paid; and second on November 27, 1991, for a year for failure to submit to a chemical analysis test. Flagg alleges that he told Guinan that there must have been a mistake because this was the first time Flagg had knowledge of that his license was currently under suspension, even though the Report noted that Flagg had been sent an official notice of the second suspension on November 27, 1991.

That same day, Guinan told Flagg that Flagg would be placed on an indefinite suspension until matters regarding his license were rectified. The next day, Flagg alleges that he brought in verification papers and showed them to Defendant Jerry Woods, a white male Manager. Woods responded by telling Flagg the matter was out of his hands. Flagg then met with Defendant Kathy Layer, the personnel supervisor. Layer spoke with Flagg's legal counselor, William Borrebach, and explained to Borrebach what would be necessary to justify the Flagg's reinstatement. Flagg alleges that these requirements were firmly agreed to and a . facsimile of the requirements was to be transmitted to the Personnel Base Office in New York on New Year's Eve. Flagg alleges this agreement was later not honored since on December 15, 1991, Flagg received a letter from Celeste Oaks, a human resource technician, stating that Flagg was terminated as of that date due to a discrepancy concerning his driving privileges in that Flagg had failed to maintain a valid driver's license and failed to advise his supervisor that his license was suspended. On December 20, 1991, Flagg's license was reinstated pending the appeal of Flagg's November 27, 1991, suspension.

Plaintiff alleges that the above named Defendants violated the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (count 1); violated Title VII, 42 U.S.C. § 2000e *et seq.* (count 2); violated 42 U.S.C. § 1981 (count 3); violated 42 U.S.C. § 1983 (count 4); violated 42 U.S.C. § 1985 (count 5); violated Plaintiff's collective bargaining rights under 29 U.S.C. § 185 (count 6); violated Plaintiff's first amendment rights (count 7); violated Plaintiff's civil rights under the Civil Rights Act of 1991 (count 8).

### Count I. Violation of Pennsylvania Human Relations Act

 To present a cognizable Pennsylvania Human Relations Act ("PHRA") claim, a plaintiff must exhaust all remedies under the statute. *See Price v. Philadelphia Elec. Co.,* 790 F.Supp. 97, 98–99

(E.D.Pa.1992) (citing Pennsylvania cases). The plaintiff must comply with the procedures of the PHRA. One such requirement is that the individual file an administrative complaint with the Pennsylvania Human Relations Commission ("Commission") within 180 days of the last discriminatory act. *See* 43 P.S. § 959. Another requirement is that the Commission be given a time period of within one year of filing to act upon a complaint; if the Commission does not act upon a complaint within one year of its filing, exhaustion has occurred.[1] *See* 43 P.S. § 962(c); *see also Price, supra.* Based upon these requirements, it follows that until exhaustion has occurred, pendent claims may not be pled in a federal civil rights act action.

Here, Flagg has not exhausted his remedies with the Commission. There is no evidence that Flagg filed a complaint with the Commission so as to have complied with the requirements necessary to seek protection under the provisions of the PHRA. Furthermore, there is no evidence that Flagg allowed the Commission the time period required to serve as exhaustion of his remedies before filing his federal civil rights claim. Since Flagg failed to exhaust his PHRA remedies, this court lacks pendent jurisdiction over his state law claim. Based upon these findings, this court finds in favor of Defendants Control Data, Guinan, Woods, and Layer on count I.

### Count II. Violation of Title VII

■ The broad claim Flagg asserts under Title VII seems best characterized as an allegation of disparate treatment since when Flagg was fired he was treated less favorably than his peers based upon his race.

■ In a disparate treatment case, a plaintiff must prove the defendant had discriminatory animus and this animus manifested itself in some action, such as dismissal or failure to promote. *See Lewis v. University of Pittsburgh,* 725 F.2d 910,

914 (3rd Cir.1983). To establish discriminatory animus, a plaintiff needs to show an intent to discriminate. The courts have broadened the plaintiff's ability to bring cases by allowing a plaintiff to establish a *prima facie* case of discrimination without requiring actual proof of intent, this case then shifts the burden of persuasion to the defendant.

The Third Circuit has summarized the framework necessary to establish a *prima facie* disparate treatment case based upon the United States Supreme Court's opinions in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Weldon v. Kraft, Inc.,* 896 F.2d 793 (3d Cir. 1990).

[T]he plaintiff has the initial burden of proving a *prima facie* case by a preponderance of the evidence, which if successful, raises the inference of unlawful discrimination. *Burdine,* 450 U.S. at 250–52 [101 S.Ct. at 1091–93].... This burden is not onerous. The plaintiff must show that he is [1] a member of a racial minority, [2] qualified for the job from which he was discharged, and [3] that others not in the protected class were treated more favorably. *See Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987).

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to clearly set forth a legitimate, non-discriminatory reason for the discharge. *Burdine,* 450 U.S. at 255 [101 S.Ct. at 1094] ... A satisfactory explanation dispels the inference of discrimination arising from the plaintiff's initial evidence. *Id.* The ultimate burden of persuasion remains with the plaintiff, who then must prove by a preponderance of the evidence that the reasons asserted by the defendant were a pretext for discrimination. *Id.* at 253 [101 S.Ct. at 1093] ... This may be

---

1. The time period may be less than one year if the individual filing the complaint is notified by the Commission that the Commission has dismissed the complaint or has not entered into a conciliation agreement to which the individual is a party. *See* 43 P.S. § 962(c).

accomplished either directly, by showing that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the asserted reason is unworthy of credence. *Id.* at 256 [101 S.Ct. at 1095] ... The plaintiff's initial evidence may be considered by the trier of fact in making this determination. *Id.* at 255 n. 10 [101 S.Ct. at 1095 n. 10]. *Weldon*, 896 F.2d at 796–97.

 If the plaintiff is unable to make out a *prima facie* case, then the plaintiff must prove actual intent to discriminate by the defendant. If the plaintiff presents direct evidence of discrimination, then there is no burden shifting; the burden remains with the plaintiff. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985).

Here, Flagg has failed to establish either a *prima facie* or a direct case of discrimination. No direct evidence of discriminatory animus on the part of the defendants was presented. Furthermore, Flagg failed to establish a *prima facie* case as he did not meet his first prong of those requirements. Although Flagg is a member of a protected class, he did not demonstrate that field technicians who belong to an unprotected class were more favorably treated—for example, that a white male field technician had his driver's license suspended and was not terminated. Nor did Flagg establish that he was qualified for the job, since one of the qualifications to be a field technician with Control Data is that the employee have a valid driver's license. At the time of his termination, Flagg did not possess a valid driver's license.

Even if Flagg had met this first level, the Defendants demonstrated Flagg was fired based upon Control Data's policy that all field technicians hold a valid driver's license and that all those employees notify the company immediately if there is a problem with their licenses. Furthermore, as there was no evidence of unprotected class members being treated differently, Flagg was unable to demonstrate by a preponderance of the evidence the Defendants explanation was a pretext, in that a discriminato-

ry reason more likely motivated the defendants or that the defendants' explanation of their reasons is unworthy of credence.

Based upon these findings, this court finds in favor of Defendants Control Data, Guinan, Woods, and Layer on Count II.

Count III. Violation of 42 U.S.C. § 1981

 Plaintiff must prove discriminatory intent to establish a 42 U.S.C. § 1981 claim. Intent may be demonstrated through disparate impact, departures from procedural norms, a history of discriminatory actions, and other relevant facts. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264–68, 97 S.Ct. 555, 562–65, 50 L.Ed.2d 450 (1977). Conclusory allegations of generalized racial bias do not establish discriminatory intent.

In addition to establishing intent, the discrimination complained of must have occurred in connection with one of several activities specified in § 1981, including the right to make and enforce contracts. The Civil Rights Act of 1991 has broadened this language so that the right to make and enforce contracts includes: "the making, performance, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (as amended by Civil Rights Act of 1991 § 101(2)). Furthermore, the 1991 Act allows that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981 (as amended by Civil Rights Act of 1991 § 101(2)).

Although termination of an employee is clearly covered by the amended § 1981, Flagg has failed to establish discriminatory intent on the part of the Defendants. There was no evidence that defendants departed from procedural norms in firing Flagg based on his suspended license and his failure to notify his supervisor that his license was suspended. Nor was there any indication that the defendants had a history of discriminatory actions against minority group members.

Based upon these findings, this court finds in favor of Defendants Control Data, Guinan, Woods, and Layer on Count III.

Count IV. Violation of 42 U.S.C. § 1983

Actions may be brought pursuant to 42 U.S.C. § 1983 against state actors who violate individuals civil rights as protected by the fourteenth amendment. To have a viable claim under § 1983, the plaintiff must assert that the defendant is either one acting under color of state law (a state actor) or is a private citizen whose activity has a close enough nexus to the state to satisfy the state action requirement. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

In this case, there has been no showing that the defendants were either state actors or were engaged in activity so closely intertwined with the state to be a state actor for this purpose. In fact, the defendants in this case are a private company and employees of that company who have no association or special relationship with the state.

Based upon these findings, this court finds in favor of Defendants Control Data, Guinan, Woods, and Layer on Count IV.

Count V. Violation of 42 U.S.C. § 1985

Actions may be brought through 42 U.S.C. § 1985(3) against private citizens who conspire to violate an individual's civil rights based upon the thirteenth amendment. To establish a § 1985(3) violation, a complaint must allege four elements: (1) a conspiracy; (2) "for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws"; (3) that the conspirators committed some act in furtherance of the conspiracy; and (4) that the plaintiff was either "injured in his person or property" or was "deprived or having and exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 103–04, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *Be-*

*thel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1172–73 (3d Cir.1978).

To establish a conspiracy, a pleading under § 1985(3) requires at least minimum factual support of the existence of a conspiracy. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.1972), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Shah v. MetPath Corp.*, 470 F.Supp. 158, 161 (E.D.Pa.1979).

In this case, Flagg has made no allegation of a conspiracy that is supported by any facts nor has Flagg alleged any acts that were made in furtherance of the alleged conspiracy. Flagg's claim fails and this court must rule in favor of Defendants Control Data, Guinan, Woods, and Layer on Count V.

Count VI. Violation of 29 U.S.C. § 185

Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, provides for suits in district courts between labor organizations and employers. However, "[s]ection 301 contemplates suits by and against individual employees as well as between unions and employers; and ... § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976) (citations omitted). Furthermore, "[t]o prevail against either the company or the Union, [employees] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Id.* at 570–71, 96 S.Ct. at 1059.

In this case, while Flagg has a right as an employee to sue to vindicate his discharge, he has failed to show that his union breached its duty of fair representation. Without this demonstration, Flagg has not meet his burden of proof. Based upon this finding, this court finds in favor of Defendants Control Data, Guinan, Woods, and Layer on Count VI.

Count VII. Violation of first amendment

■ For a plaintiff to assert a violation of his first amendment rights, plaintiff must establish that his rights of expression were infringed by a state action. *See Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977) (finding rights granted under the first amendment against state action include the right to speak and to refrain from speaking); *Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 162 (3d Cir.1989) (finding first amendment claim failed because plaintiff failed to allege the requisite state action).

In this case, Flagg failed to meet his burden of proving state action existed. Therefore, this court must find in favor of Defendants Control Data, Guinan, Woods, and Layer on Count VII.

Count VIII. Violation of Civil Rights Act of 1991

■ The Civil Rights Act of 1991 became effective as of November 21, 1991. While the Act added new laws, its main impact was to amend the existing civil rights statutes. In this case, Plaintiff has asserted that the 1991 Act should be retroactively applied to his case. Since the alleged discriminatory action took place here December 15, 1991, however, these actions come squarely within the new act and there is no need to inquire as to the 1991 Act's retroactivity. The impact of this Act on this case, though, is through the amendments to 42 U.S.C. § 1981; since none of the new laws affect this race discrimination action. The impact of these amendments were been discussed above in Count III. As the impact of the 1991 Act was considered where relevant and as the 1991 Act does not grant any additional rights to the plaintiff under these facts, this court finds in favor of Defendants Control Data, Guinan, Woods, and Layer on Count VIII.