Charles S. JONES

v.

**SCHOOL DISTRICT OF PHILADELPHIA.**

Civ.A. No. 97–CV–2653.

United States District Court, E.D. Pennsylvania.

Oct. 7, 1998.

Reginald Allen, Harper & Paul, Philadel-
phia, PA, for Plaintiff.

Andrew M. Rosen, School District of Philadelphia, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendant, the School District of Philadelphia has filed a motion for summary judgment on all of the claims set forth against it in plaintiff's complaint. After careful review of the record and for the reasons set forth below, the motion shall be granted.

### Factual Background

Plaintiff, Charles Jones, an african-american, was employed by the School District of Philadelphia as a physics, chemistry and physical science teacher from 1985 through June, 1995 when he involuntarily resigned after being threatened with removal. During his employment with the School District, Mr. Jones taught at Northeast High School from 1985 until April, 1993 when he was administratively transferred to Washington High School. The following year, Plaintiff was again transferred from Washington High School to Edison High School.

Plaintiff contends that while he was employed at each of the three high schools, he was subjected to discriminatory and retaliatory treatment because of his race in that he was treated differently than similarly situated white teachers, was not selected for a coaching position for which he was better qualified than the white male candidate who received it and that he was passed up for an assignment to teach a physics class or roster for which he was certified while the white female candidate who received the class assignment was not.

In response to Plaintiff's allegations, Defendant asserts that Plaintiff was terminated for cause and only after he was given numerous warnings about his teaching and grading techniques, his repeated refusals to meet with parents, several incidents of improper behavior involving and verbal altercations with other teachers and students and following an incident in which he physically struck and injured an Edison High School student.

In 1993 and 1995, Plaintiff filed complaints with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission alleging racial discrimination in the terms and conditions of his employment. He subsequently received notice of his right to sue from the EEOC in January, 1997. He commenced this suit in March, 1997.

### Summary Judgment Standards

The standards to be applied by the district courts in ruling on motions for summary judgment are set forth in Fed.R.Civ.P. 56. Under subsection (c) of that rule,

.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, a court is compelled to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Aries Realty, Inc. v. AGS Columbia Associates*, 751 F.Supp. 444 (S.D.N.Y. 1990).

Generally, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital*, 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying*

*Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa.1990).

Where, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against [it]." Fed.R.Civ.P. 56(e). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and it cannot rely on unsupported assertions, conclusory allegations, or mere suspicions or beliefs in attempting to survive such a motion. *Tziatzios v. U.S.,* 164 F.R.D. 410, 411, 412 (E.D.Pa.1996) citing *Celotex v. Catrett, supra,* 477 U.S. at 325, 106 S.Ct. at 2553–54, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3rd Cir.1989).

### Discussion

**1. Plaintiff's Discrimination Claims under Title VII and the Pennsylvania Human Relations Act**

■ In this action, Plaintiff seeks relief under both Title VII, 42 U.S.C. § 2000e, et. seq. and the Pennsylvania Human Relations Act, 43 P.S. § 951, et. seq. ("PHRA"). The two acts are substantially similar and while the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts. *Kelly v. Drexel University,* 94 F.3d 102, 105 (3rd Cir.1996), citing, *inter alia, Gomez v. Allegheny Health Services, Inc.,* 71 F.3d 1079, 1083–84 (3rd Cir.1995) and *Chmill v. City of Pittsburgh,* 488 Pa. 470, 412 A.2d 860, 871 (1980).

■ Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a). An "employer" within the meaning of Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." [1]

■ In like fashion, the PHRA defines "employer" as including "... the Commonwealth or any political subdivision or board, department, commission or school district thereof and any person employing four or more persons within the Commonwealth ..." 43 P.S. § 954(b). While Title VII is not concerned with the mere presence of impermissible motives but is rather directed to employment decisions that result from those motives, neither Title VII nor the PHRA is designed to protect the overly sensitive plaintiff. *Miller v. CIGNA,* 47 F.3d 586, 593 (3rd Cir.1995); *Stewart v. Weis Markets, Inc.,* 890 F.Supp. 382, 389 (M.D.Pa.1995).

■ To establish employment discrimination, it must be shown that the employer bore a racially discriminatory animus against the employee and that this animus manifested itself in some challenged action, whether it be dismissal, failure to promote, or failure to hire. *Lewis v. University of Pittsburgh,* 725 F.2d 910, 914 (3rd Cir.1983). To prevail on a Title VII claim, plaintiff may pursue either of two courses. If the plaintiff possesses direct evidence [2] of discrimination, he may pursue what is known as a "mixed motives" case. *Williams v. Greyhound Lines, Inc.,* 1998 WL 551981, at *3 (E.D.Pa.1998). In such a case, if plaintiff demonstrates that an illegal consideration, such as race, was a "substantial factor in the decision," the burden shifts to the defendant to prove that "the

---

1. The law in this Circuit, however, clearly holds that individual employees cannot be held liable under Title VII. *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1077–78 (3rd Cir. 1996); *DeJoy v. Comcast Cable Communications, Inc.,* 941 F.Supp. 468, 474 (D.N.J.1996).

2. Direct evidence includes comments from a decision maker which tend to show state of mind and would not include "stray remarks in the workplace." *Williams v. Greyhound Lines, Inc., infra,* quoting *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775.

decision would have been the same absent consideration of the illegitimate factor." *Id.,* quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 276, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1113 (3rd Cir.1997).

In the absence of direct evidence, discrimination may be shown through circumstantial evidence. *Id.* In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the U.S. Supreme Court first delineated the basic allocation of burdens and order of presentation of proof in a discrimination action using circumstantial evidence. Under the *McDonnell Douglas* scenario, the plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. Such a prima facie case is established when a plaintiff has shown (1) that he is a member of a protected class, and (2) is qualified for the position but (3) was either not hired or fired from that position (4) under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is ultimately filled by a person not of the protected class. *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1066, note 5 (3rd Cir.1996); *Waldron v. SL Industries, Inc.,* 56 F.3d 491, 494 (3rd Cir.1995).

Once a prima facie case has been shown, the burden then shifts to the employer to articulate some non-discriminatory reason for the challenged action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Lewis,* 725 F.2d at 914. Then, should the defendant succeed in proffering a facially legitimate reason for the employment decision, the burden shifts back to the plaintiff-employee to demonstrate that the reason given by his employer is in fact merely a pretext for discrimination. *Id.,* citing *McDonnell Douglas.* Throughout, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff and even when the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions. *Texas Department of Community Affairs v.*

*Burdine,* 450 U.S. 248, 253, 260, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981).

Stated otherwise, if the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant. The defendant's "production" having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against him because of his race. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). In making this determination, the fact finder's disbelief of the reasons put forward by the defendant may, together with the elements of the prima facie case, suffice to show intentional discrimination and thus rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. *Id.*

Taking this analysis one step further, the Courts in the Third Circuit have held that to defeat a motion for summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, be it direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or, (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3rd Cir.1994), citing, *inter alia, Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 523 (3rd Cir.1992); *Adelman v. GMAC Mortgage Corp.,* 1997 WL 805274, at *3 (E.D.Pa. 1997).

▆▆▆ Applying all of the foregoing to the case at hand, we find that plaintiff has met his burden of showing that he is a member of a protected class given that he is an african-american and that he was qualified for his teaching position, as he is certified to teach biology, mathematics, physics and physical science and possesses a master's degree in education in addition to his bachelor's degree. Likewise, while scant, we do find that plaintiff has adduced sufficient evi-

dence which could arguably support a jury finding that the termination of his employment occurred under circumstances that give rise to an inference of unlawful discrimination.[3]

■ As to the third element, however, the record reflects that plaintiff was not fired from his position, but rather that he resigned under threat of termination. We therefore must determine whether or not plaintiff's resignation amounted to a "constructive discharge."

■ Under the applicable law, a plaintiff who voluntarily resigned may maintain a case of constructive discharge when the employer's allegedly discriminatory conduct creates an atmosphere that is the constructive equivalent of a discharge. *Sheridan v. E.I. DuPont de Nemours, supra,* 100 F.3d at 1075 citing *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1079 (3rd Cir.1992). An objective test is applied to determine whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Id.,* citing *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1084 (3rd Cir.1996) and *Goss v. Exxon Office Systems, Co.,* 747 F.2d 885, 888 (3rd Cir. 1984).

■ While there is ample evidence in the record that plaintiff was the recipient of numerous disciplinary memoranda and unsatisfactory classroom evaluations and that his interpersonal skills, teaching and coaching techniques were criticized by the principals and vice principals of the three high schools at which plaintiff taught, there simply is no evidence that any of these criticisms, unfavorable evaluations or disciplinary/remedial actions resulted from any racial animus or discrimination on the part of the school district. Although Mr. Jones relies in large measure on Northeast Principal Hoban's alleged racial bias as reflected by his reference sometime in 1990 to an african-american student as a "black princess" and his membership in an all male, nearly all white school-affiliated club, he has produced no evidence that Mr. Hoban bore **him** any racial bias, that it was because of this racial bias that plaintiff was administratively transferred from Northeast High School, or that Hoban played any role in Edison High School Principal Torres' ultimate recommendation to terminate him. To be sure, the record evidence suggests that, if anything, the physical altercation in which plaintiff was involved with a puerto rican student arose because plaintiff made certain remarks in class which could be construed as disparaging to puerto ricans and that plaintiff was administratively transferred from Northeast because he flatly refused to meet with a parent even after he had been directed to do so by the Assistant

---

**3.** Indeed, it has long been recognized that the anti-discrimination laws may be violated not only by obvious, intentional acts of discrimination but also by employment practices which are neutral on their face and in intent but which nevertheless discriminate in effect against a particular group. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 1861, 52 L.Ed.2d 396 (1977). Such a violation may be shown under either a disparate impact or disparate treatment theory and it appears that here, plaintiff is pursuing a disparate treatment theory.

A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion. *E.E.O.C. v. Metal Service Co.,* 892 F.2d 341, 346–347 (3rd Cir.1990), citing *International Brotherhood,* 431 U.S. at 335–336, 97 S.Ct. at 1854–1855. Unlike the discriminatory impact theory, proof of the employer's discriminatory motive is critical and can be shown through either direct or circumstantial evidence. *Id.* A plaintiff may therefore establish the fourth element of the prima facie case by showing that non-members of the protected class were treated more favorably than he or she was. *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3rd Cir.1993); *Ezold v. Wolf, Block, supra,* 983 F.2d at 522.

In this case, Mr. Jones argues that he was treated differently than white teachers in that while his actions resulted in discipline or threats of discipline, similar action was not taken against other teachers. Here, while there is no evidence that plaintiff was replaced by an individual who is not a member of his protected class, there is some evidence that Northeast High School principal Francis Hoban criticized and submitted disciplinary memoranda on plaintiff for his failure to file lesson plans at the same time that a vast number of other teachers were also in violation of the lesson plan rule. Although there is no evidence on this record as to the races of any of these other teachers, in reading the evidence in the light most favorable to plaintiff, we shall afford him the benefit of the doubt for purposes of our analysis of this element of the case.

Principal and Principal.[4] As statements even by decisionmakers cannot constitute evidence if there is no evidence somehow linking that person to the actual employment decision, we find that insufficient evidence exists to support plaintiff's claim of constructive discharge or that a prima facie case has been established. *See, e.g.: Walden v. Georgia–Pacific Corp.,* 126 F.3d 506, 516 (3rd Cir. 1997), citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 778 (3rd Cir.1994).

■ However, even assuming *arguendo,* that plaintiff has made out a prima facie case, he has produced no evidence to rebut or show that the reasons articulated by the School District for his termination are a pretext for discrimination. In this regard, it is the defendant's position that plaintiff was administratively transferred and threatened with termination because of repeated instances of improper conduct including having threatened students, refusing to meet with parents, refusing to obey directives to attend parent-teacher conferences, and eventually, striking a student.

Defendant has produced more than ample evidence of numerous parental complaints about plaintiff's teaching and coaching techniques, unsatisfactory classroom reviews, and disciplinary and warning memoranda generated over the course of plaintiff's ten-year teaching career with the school district at all three high schools to which he was assigned. Defendant has also produced records reflecting that similar disciplinary warnings and measures were taken by it against numerous other teachers for improper teaching methods and comments and demonstrating that at least one of those other teachers was administratively transferred. It is further clear from those other teachers' records, however, that none of these other teachers who were disciplined ever either threatened or struck and injured a student.

Plaintiff, on the other hand, has produced no evidence aside from his own testimony that the actions directed against him by the school district were racially motivated. In fact, by plaintiff's own admissions, (1) everyone throughout Northeast High School was generally subject to the same criteria; (2) he does not know whether the Washington High School Science Department head knew what his race was when he assigned the physics roster which plaintiff desired to a less experienced white female; (3) he himself was never told by either Mr. Hoban or any white parents that he was not qualified to teach by virtue of his race; and (4) the only basis for his belief that Principal Torres recommended his termination was that he had heard that Mr. Torres had conveyed through facial expressions and body language his displeasure at learning that one of his african-american teachers was romantically involved with a puerto rican woman. (Pl's Dep. at p. 69, 145, 352, 378–381). It is, of course, well established that the plaintiff's own belief or feeling that he was the victim of disparate treatment is insufficient, standing alone, to preclude judgment as a matter of law. *Arzate v. City of Topeka,* 884 F.Supp. 1494, 1501 (D.Kan. 1995), citing, *inter alia, Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1426 (10th Cir.1993). In view of all of the foregoing, we can reach no other conclusion but that summary judgment is properly entered in favor of defendant and against plaintiff on his discrimination claims.

## 2. Plaintiff's Claims of Retaliation Under Title VII and the PHRA

■ Plaintiff's complaint also appears to suggest that he is pursuing a claim for retaliation in violation of both the PHRA and Title VII, presumably for the filing of his EEO complaints in February and July, 1993.

It is an unlawful employment practice under 42 U.S.C. § 2000e–3(a) for an employer to discriminate against any employee because

---

**4.** In response to this incident and Mr. Hoban's recommendations, Regional Superintendent Frank Guido held a conference in March, 1993 with plaintiff, his union representative and a representative from Labor Relations at which time plaintiff was given the opportunity to explain his position. Following that conference, the Regional Superintendent upheld Principal

Hoban's recommendations that plaintiff be suspended without pay for a three-day period and immediately be administratively transferred. That decision was subsequently modified by a three-member panel consisting of the School District's Associate Superintendent for School Operations, its legal counsel and a Grievance Officer from the Philadelphia Federation of Teachers.

that employee has opposed any practice made an unlawful employment practice or because he has "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

Similarly, the PHRA renders it an unlawful discriminatory practice "[f]or any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted in any manner, in any investigation, proceeding or hearing under this act." 43 P.S. § 955(d).

The allocation of the burden of proof for both the federal and state retaliation claims follows the familiar Title VII standards which will again vary depending upon whether the suit is characterized as a "pretext" suit or a "mixed motives" suit. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3rd Cir.1997). Again, where as here, the plaintiff is proceeding under a "pretext" theory, the *McDonnell Douglas* principles apply. *Id.; Page v. ECC Management Services,* 1998 WL 408821, at *5 (E.D.Pa.1998). Thus, to succeed under a retaliation theory, the plaintiff must prove that (1) he was engaged in protected activity; (2) he was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the discharge. *Woodson, supra.; Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173, 177 (3rd Cir.1997); *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3rd Cir.1989); *Johnson v. Super Fresh Food Markets, Inc.,* 1998 WL 372396 (E.D.Pa.1998); *Consumers Motor Mart v. Human Relations Commission,* 108 Pa.Cmwlth. 59, 529 A.2d 571, 575 (1987).

In application of the preceding principles, we note that there is absolutely no evidence on the record before us that defendant's actions against plaintiff were in retaliation for his filing of EEO complaints. Indeed, with respect to plaintiff's contentions against Francis Hoban, the record reflects that plaintiff made no EEO filings until **after** Hoban recommended and the School District upheld, his recommendation for plaintiff's adminis-

trative transfer. Plaintiff produces no evidence which could in any way be construed as showing any knowledge on the part of either Principal Gutelius or Principal Torres of plaintiff's previous EEO filings or that the School District's ultimate decision to terminate plaintiff was motivated by any reason other than plaintiff's actions in striking and injuring the student at Edison High. For these reasons, judgment as a matter of law shall also be entered in favor of defendant on plaintiff's retaliation claims.

### 3. Plaintiff's Claims under 42 U.S.C. § 1981

Plaintiff also claims that Defendant discriminated against him in violation of 42 U.S.C. § 1981 by transferring him in the Spring of 1994 to Edison High School and causing his involuntary resignation one year later.

Pursuant to § 1981(a):

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

Generally, the legal elements of a Section 1981 claim are identical to those under Title VII. *Anderson v. Douglas & Lomason, Co., Inc.,* 26 F.3d 1277, 1284, n. 7 (5th Cir.1994). A successful § 1981 claimant is required to prove intentional racial discrimination through the burden-shifting framework of *McDonnell Douglas* and *Burdine. Gutman v. TICO Insurance Co.,* 1998 WL 306502, at *2 (E.D.Pa.1998), citing, *inter alia, Stewart v. Rutgers, the State University,* 120 F.3d 426, 432 (3rd Cir.1997). Conclusory allegations of generalized racial bias do not establish discriminatory intent. *Flagg v. Control Data,* 806 F.Supp. 1218, 1223 (E.D.Pa.1992), citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264–268, 97 S.Ct. 555, 562–565, 50 L.Ed.2d 450 (1977).

Given our analysis as set forth above and for the same reasons enunciated with respect to plaintiff's Title VII and PHRA claims, we likewise reach the identical conclusion with regard to plaintiff's § 1981 claims. Summary judgment shall therefore be entered in favor of defendant and against plaintiff under § 1981 as well.

### Conclusion

For all of the reasons outlined above and in accordance with the attached order, Defendant's motion for summary judgment shall be granted and judgment entered as a matter of law in favor of the defendant and against the plaintiff on all of the claims set forth in plaintiff's complaint.

### ORDER

AND NOW, this day of October, 1998, upon consideration of the Motion of the Defendant School District of Philadelphia for Summary Judgment and for the reasons set forth in the foregoing Memorandum Opinion, it is hereby ORDERED that the Motion is GRANTED and Judgment is hereby entered in favor of Defendant and against Plaintiff as a matter of law.