Rita SHESKO, Plaintiff,

v.

**CITY OF COATESVILLE, Defendant.**

**No. CIV.A.01–CV–6780.**

United States District Court,
E.D. Pennsylvania.

Nov. 20, 2003.

Stephen C. Kunkle, Kunkle & Sennett, West Chester, PA, for Plaintiff.

David J. MacMain, Sheryl L. Brown, Montgomery McCracken Walker & Rhoads, LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the Motion for Summary Judgment of Defendant, City of Coatesville. Plaintiff asserts claims of gender discrimination against Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, and under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. Ann. § 951 *et seq.*[1] Plaintiff alleges she was denied a promotion, subject to a sexually hostile environment, and generally treated adversely because of her gender. Though Defendant moves for summary judgment on all of Plaintiff's claims, Plaintiff's Memorandum of Law in Opposition only opposes the motion as to the failure to promote claim. For the reasons that follow, we will grant Defendant's Motion for Summary Judgment in part and deny the Motion in part.

## *Factual Background*

Rita Shesko ("Plaintiff") is sergeant, and the only female police officer, in the City of Coatesville's Police Department ("Police Department"). She has been employed by the Police Department since 1989, first as a patrol officer, and then as a sergeant pursuant to a promotion in 1996.

In November 2000, the City created two lieutenant's positions. The process for choosing officers to be nominated to the City Council for the positions began with a civil service examination comprised of a written and oral test. Plaintiff took the examination, and as a result of her score was ranked second of the four eligible candidates for the positions. Following these examinations an unscored leadership psychological examination was administered on the eligible candidates. Thereafter, the candidates were individually interviewed by a panel comprised of City Manager Paul Janssen, Police Chief Michael McMahon, and Assistant City Manager Francis Pilotti, now deceased.

The result of the interview process was that Matthew Gordon, the first ranking candidate, was nominated to the City Council for the patrol lieutenant position, and Julius Canale, the fourth ranking candidate, was nominated for the administrative lieutenant position. Neither Plaintiff, nor the third ranking candidate, Terrence Alexander, was nominated for a lieutenant position. City council approved the nominations, and as a result, Matthew Gordon and Julius Canale were promoted to lieutenant. Plaintiff contends that she was not promoted because of her gender.

---

**1.** Courts have generally interpreted the PHRA in accordance with the standards applied to claims brought under Title VII of the Civil Rights Act of 1964. *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F.Supp.2d 559, 562 (E.D.Pa.2000). Accordingly, we analyze Plaintiff's Title VII and PHRA claims under the same standards.

Plaintiff also contends she has been subject to a sexually hostile environment based on the following conduct: some of Plaintiff's co-employees have referred to her as either "bitch" or "cunt" behind her back; an officer told Plaintiff that he overheard a conversation in which another officer and one of Plaintiff's fellow sergeants stated that women police officers were "glorified dispatchers" and didn't belong in police work; one of Plaintiff's fellow sergeants asked Plaintiff if it was "that time of the month" and called her an "hysterical female"; on one occasion Plaintiff found pornographic material in the visor of the patrol car she shares with other sergeants; on one occasion Plaintiff found pornographic material in the women's restroom at the police station; Chief McMahon told Plaintiff a story about how he believed his son had sex with a woman who later became a police officer and lost a sexual harassment claim; Chief McMahon told Plaintiff about a program he was listening to about sexually transmitted diseases among women in Plaintiff's age group.

Plaintiff further contends that she has been disparately treated compared to male officers and references disciplinary action taken against her.

On or about February 23, 2001, Plaintiff filed a written charge asserting gender-based discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). On or about September 25, 2001, the EEOC issued to Plaintiff a Notice of Right to Sue. Plaintiff commenced this suit in December, 2001.

2. We believe that much, if not all, of Plaintiff's claim that she has been treated differently because of her gender is addressed infra as part of Plaintiff's failure to promote, retaliation, and hostile environment claims. Other than the claims addressed infra, the only other instance of disparate treatment alleged in

### Legal Standard

A motion for summary judgment shall be granted where all of the evidence demonstrates that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.(c). A genuine issue of material fact exists "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When considering a motion for summary judgment, a court must view all inferences in a light most favorable to the non-moving party, and facts asserted by the non-moving party, if supported by sufficient evidence, must be taken as true. *See, e.g., Aman v. Cort Furniture Rental,* 85 F.3d 1074, 1080 (3d Cir.1996). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Discussion

*Disparate Treatment under Title VII and the PHRA*

■ Plaintiff's Complaint alleges Plaintiff was subject to adverse treatment because of her gender. The crux of this claim is Plaintiff's allegation that she was denied the promotion to lieutenant because of her gender.[2]

Plaintiff's Complaint consists of Plaintiff's supervisors trying to "discipline her for alleged acts of wrongdoing that are petty at best, while ignoring significant and even potentially criminal acts of wrongdoing that other male police officers and supervisory personnel have committed." Plaintiff's Memoran-

### 1. *Failure to promote claim*

■ The Third Circuit has held that a case of failure to promote under Title VII shall follow the *McDonnell Douglas* burden-shifting framework. *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1994). Under this framework, Plaintiff must first establish a prima facie case of unlawful discrimination by showing (i) that she belongs to a protected category; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite her qualifications she was rejected; (iv) under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410–11 (3d Cir.1999). Once Plaintiff establishes her prima facie case, the burden then shifts to the Defendant to articulate a legitimate nondiscriminatory reason for its decision. *Id.* at 412. To survive summary judgment at this point, the Plaintiff must "point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Because Defendant does not dispute that Plaintiff has established a prima facie case of discrimination, our analysis turns on the second and third prongs of the *McDonnell Douglas* framework.

■ A plaintiff can discredit an employer's proffered reasons by demonstrating such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that a "reasonable fact finder *could* rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 764–65. Defendant's Memorandum of Law articulates Defendant's legitimate nondiscriminatory reasons for promoting Julius Canale rather than Plaintiff as including "the closeness of the scores, his [Canale's] vision for the department." Def. Memo. at p. 25. Janssen testified that the decision to nominate Julius Canale instead of Plaintiff was based on Plaintiff's "limited to no experience in the detective division" and her approach to management as revealed by her during the interview process. *Id.* at pp. 130–32. McMahon testified that Canale was chosen for the promotion because the management style he portrayed in the interview process was most in line with the "vision for the department." McMahon's Dep. at pp. 204–06. Plaintiff testified in her deposition, however, that Chief McMahon told her that Julius Canale was nominated for the promotion based on his work performance.[3] Plf.'s

---

dum does not address this allegation and Plaintiff has otherwise failed to produce evidence to support this claim. Defendant's Memorandum addresses what Defendant believes Plaintiff is referencing in this allegation and provides a legitimate reason for issuing a written reprimand which remains unrebutted by Plaintiff. Def.'s Memo. of Law at p. 13; Def.'s Ex. N.

In her response to Defendant's interrogatories, Plaintiff alleges Sgt. Alexander made her "jump through hoops that nobody else had to jump through." Such unsupported conclusory statements are insufficient to establish discriminatory intent. *See Jones v. School Dist. of Philadelphia*, 19 F.Supp.2d 414, 421

(E.D.Pa.1998). Plaintiff also alleges that Chief McMahon invited other supervisors to his home for social events but did not invite her. Plf.'s Response to Interrogatory No. 3 at Def.'s Ex. C. Plaintiff has failed to produce any evidence to suggest that Plaintiff was excluded because of her gender.

**3.** Defendant's Memorandum of Law asserts that both McMahon and Janssen testified that performance was not considered in the nomination. Def.'s Memo. of Law. at p. 25. Janssen's deposition testimony reveals an apparent confusion between the consideration of disciplinary records and the consideration of performance in the decision of whom to nom-

Dep. at pp. 128–30. We therefore find that this apparent inconsistency in the reasons articulated by Defendant precludes summary judgment in favor of Defendant as to Plaintiff's failure to promote claim.

Furthermore, regarding Plaintiff's lack of detective experience, cited by Janssen as a factor considered in nominating Julius Canale for the promotion, Plaintiff asserts that Chief McMahon was aware of her willingness to do detective work but that he denied her the opportunity based on reasons that imply sex discrimination. In his deposition, Chief McMahon indicated that part of the reason he did not assign Plaintiff to detective sergeant was his concern about her availability because her husband is a police officer and she has children. McMahon Dep. at pp. 53–57. We find that Plaintiff has satisfied her burden of pointing to some evidence from which a fact finder could reasonably believe that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* Defendant's motion for summary judgment is therefore denied as to Plaintiff's claim for failure to promote.

*Hostile Environment Claim under Title VII and the PHRA*

 Plaintiff's Complaint alleges Plaintiff was subjected to a sexually hostile work environment. In order to establish a hostile work environment claim, Plaintiff must prove five elements: "(1) the employee suffered intentional discrimination because of [membership in a protected group]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [protected group] in the same position; and (5) the existence of respondeat superior liability."

*Shramban v. Aetna,* 262 F.Supp.2d 531, 535 (E.D.Pa.2003)(quoting *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 295 (3d Cir.1999)). In determining whether an environment is sufficiently hostile or abusive, courts must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The conduct "must be extreme to amount to a change in the terms and conditions of employment." *Id.*

 Plaintiff alleges that she was subject to a sexually hostile work environment based on the following conduct: approximately three of Plaintiff's co-employees have referred to her as either "bitch" or "cunt" behind her back; an officer told Plaintiff that he overheard a conversation in which another officer and one of Plaintiff's fellow sergeants stated that women police officers were "glorified dispatchers" and didn't belong in police work; one of Plaintiff's fellow sergeants asked Plaintiff if it was "that time of the month" and called her a "hysterical female"; on one occasion Plaintiff found pornographic material in the visor of the patrol car she shares with other sergeants; on one occasion Plaintiff found pornographic material in the women's restroom; Chief McMahon told Plaintiff a story about how he believed his son had sex with a woman who later became a police officer and lost a sexual harassment claim; Chief McMahon told Plaintiff about a program he was listening to about sexually transmitted diseases among women in Plaintiff's age group. See Plf.'s Interrogatory Responses at Def.'s Ex. C.

inate for the promotion. Janssen's Dep. at pp. 139–41.

We find that, based on the totality of the circumstances, the conduct complained of by Plaintiff is not sufficiently pervasive and regular to establish a claim for a sexually hostile work environment. First, most of the comments Plaintiff complains about occurred outside of Plaintiff's presence.[4] Plf.'s Dep. at p. 135, 137, 139. Plaintiff's deposition testimony reveals that the name calling was actually only three discrete incidents of which Plaintiff was later informed. *Id.* at p. 149, 155, 156. Plaintiff has not identified even approximate dates of the alleged comments, and in some instances cannot even identify the year.[5] *Id.* at 139. The record also reveals that this type of "offensive" language was not directed only at Plaintiff and Plaintiff herself was not immune from its use.[6] Belmonte Dep. at p. 65; Alexander Dep. at p. 74–75. Furthermore, despite the fact that Plaintiff alleges some of these comments were made before Chief McMahon became Chief in March, 1998, Plaintiff admits that she failed to report any of these comments to a supervisor until she "finally went to Chief McMahon." (Plf.'s Dep. at p. 135–38, 156–57).

 Plaintiff alleges that on one occasion she found pornographic materials tucked in the visor of the patrol car that she shared with other supervisors. Plf.'s Dep. at p. 140–47. Plaintiff cannot recall the year in which she found the pornographic material in the patrol car and admits that she put the material into her own filing cabinet and held it there for an unspecified amount of time before turning it over to Chief McMahon. *Id.* Plaintiff also alleges she found pornographic material on one other occasion in the women's restroom at the police station. *Id.* at 160. Plaintiff admits that she never turned over this pornographic material. *Id.* Plaintiff has produced no evidence to suggest that these pornographic materials were intended for her and she has not found any pornographic materials since these two undated incidents. *Cf. Bennett v. Corroon & Black Corp.,* 845 F.2d 104, 106 (5th Cir. 1988) (finding that cartoons depicting plaintiff engaged in crude sexual activities created hostile work environment); *Ferrell v. Harvard Industries, Inc.,* 2001 WL 1301461*7 (E.D.Pa.2001)(finding frequent posting of pornographic pictures and daily sexual comments sufficiently severe and pervasive).

As for Chief McMahon's stories, while we do find them inappropriate, they are not sufficiently severe and pervasive to create a hostile environment. *See Cooper– Nicholas v. City of Chester,* 1997 WL 799443, at *3–4 (E.D.Pa. Dec. 30, 1997) (finding plaintiff's work environment not severely hostile although plaintiff's supervisor consistently made disparaging, vulgar, and offensive comments in public). This conclusion is supported by the fact that Plaintiff never told Chief McMahon that these stories made her uncomfortable and she never reported the conduct to any superior. Plf.'s Dep. at p. 163–65.

---

4. Plaintiff fails to provide evidence that corroborates these alleged comments, such as affidavits or deposition testimony of the individuals who allegedly told her about these comments.

5. Plaintiff claims that "some of this started" when she first came on the police force, and she has been on the force since 1986. Plf.'s Dep. at p. 136. This is problematic because some of the incidents Plaintiff complains about appear to have occurred more than 300 days before the filing of Plaintiff's EEOC complaint on February 25, 2001. Defendant vaguely argues this point but cannot clearly articulate which allegations should not be considered because Plaintiff has failed to establish any sort of coherent time line for the alleged harassment.

6. This also calls into question whether some of the name calling was motivated by Plaintiff's gender.

We find that the conduct complained of by Plaintiff, spread out over an unspecified number of years, is not sufficiently severe or pervasive to constitute a hostile environment. Furthermore, Plaintiff has failed to produce any evidence that the conduct interfered with her work performance. Defendant's motion for summary judgment as to Plaintiff's hostile environment claim is therefore granted.

*Retaliation claim under Title VII and the PHRA*

■■■ Plaintiff's Complaint further alleges that Defendant retaliated against her in violation of Title VII and the PHRA. "To advance a prima facie case of retaliation, a plaintiff must show that (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Farrell v. Planters Lifesavers Company*, 206 F.3d 271, 279 (3d Cir. 2000). There is no dispute that Plaintiff's complaints filed with the EEOC and the PHRC are "protected employee activities."

■■■ Plaintiff alleges that she suffered from the following adverse employment actions: the implementation of a departmental policy prohibiting officers from conducting internal investigations, a "written reprimand," and performance evaluations that are "not as good as they had been previously." Plf.'s Complaint; Plf.'s Response to Interrogatory No. 4 at Def.'s Ex. C. We find that, as a matter of law, Plaintiff has failed to establish a prima facie case of retaliation because the complained of conduct is not an "adverse employment action" and Plaintiff has also failed to establish the requisite causal connection.

First, the departmental policy is applicable to all employees and was issued prior to Plaintiff's complaint with the EEOC.

Def. Ex. G; Plf.'s Complaint ¶ 18. This policy, therefore, cannot be deemed to be an "adverse employment action" taken in retaliation for Plaintiff's EEOC complaint.

Second, the written reprimand issued to Plaintiff by Chief McMahon for violation of the new policy was actually termed a "Performance Counseling," resulted in no formal discipline, and was also issued before Plaintiff filed charges with the EEOC. Def.'s Ex. J; Plf.'s Complaint ¶ 18. The written reprimand, therefore, cannot be deemed to be an "adverse employment action" taken in retaliation for Plaintiff's EEOC complaint.

Finally, Plaintiff alleges that two employment evaluations completed by Lieutenant Gordon since the filing of the charge of discrimination have areas that have "reflected poorly or less than desirably on her performance." Plf.'s Response to Interrogatory No. 4 at Def.'s Ex. C. Plaintiff goes on to explain that she was cited for excessive use of sick time, when in fact she had doctor's excuses, and her "ongoing problem with Officer Pinto" was "referenced in a negative way." *Id.*

■■■ Employer conduct constitutes an "adverse employment action" under Title VII only if it "alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affect[s] his [or her] status as an employee.' " *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997) (citing 42 U.S.C. § 2000e–2(a)). Plaintiff does not allege that her job was affected in any way by these two employment evaluations. We therefore find that two employment evaluations that have "areas" Plaintiff believes have "reflected poorly or less desirably on her performance" are insufficient to constitute an adverse employment action under Title VII. *See Hay v. GMAC Mortg. Corp.*, 2003 WL 22133801*6 (E.D.Pa.2003)("Even

**728**

a poor performance rating does not give rise to an adverse employment action unless it has a tangible effect on recipient's employment"); *see also Smart v. Ball State Univ.,* 89 F.3d 437, 442–43 (7th Cir.1996)(undeserved negative evaluations alone cannot be an adverse employment action).

Defendant's motion for summary judgment as to Plaintiff's retaliation claim is granted.

### Conclusion

An appropriate order follows.

### ORDER

AND NOW, this 20th day of November, 2003, upon consideration of Defendant City of Coatesville's Motion for Summary Judgment (Document No. 18) and Plaintiff's Response thereto (Document No. 20), it is hereby ORDERED, for the reasons stated in the accompanying Memorandum, as follows:

1) Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's First Cause of Action (Title VII violations) with the EXCEPTION of Plaintiff's claim for gender discrimination based on failure to promote; and

2) Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's Second Cause of Action (PHRA violations) with the EXCEPTION of Plaintiff's claim for gender discrimination based on failure to promote.