**Richard GRANDE, Plaintiff,**

v.

**STATE FARM MUTUAL AUTO-MOBILE INSURANCE CO., Defendant.**

No. CIV. A. 98–2259.

United States District Court, E.D. Pennsylvania.

Feb. 18, 2000.

Harry J. Cooper, Cooper and Collins, Chalfont, PA, for Richard Grande, Plaintiff.

Robert M. Goldich, Lisa Nass Grabelle, Wolf, Block, Schorr and Solis–Cohen LLP, Philadelphia, PA, for State Farm Mutual Automobile Insurance Co., Defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is defendant's motion for summary judgment. Because there is no genuine issue of material fact, the court will grant the motion.

## I. Background[1]

Plaintiff Richard Grande was employed by State Farm from 1987 until October 1994. At the time of the events at issue in this case, Grande was working as a claims specialist in the Bodily Injury Unit at State Farm's Hatfield, Pennsylvania office. His primary duty was to process automobile injury claims.

His secretary was Martha Littley. On September 26, 1994, Littley complained to Pius Kang, the individual who supervised both herself and Grande, that Grande had sexually harassed her. Upon Kang's request, Littley put her complaint in writing See Def. Ex. A (letter of September 28, 1994, alleging that Grande sexually ha-

---

1. Unless otherwise noted, these undisputed facts are taken from the submissions of both parties.

rassed her)[2]; Def. Ex. C at 7–8, 22 (Kang Dep.). Kang reported Littley's complaint to the Human Resources Department, *see* Def. Ex. C at 7–8, and on September 30, 1994, Janet Hammerman McCleary, the Divisional Claims Superintendent, and Scott Knudsen, the Personnel Manager, interviewed Littley. According to the notes taken by Hammerman McCleary and Knudsen, Littley reaffirmed her complaint but stated that she had not objected vigorously to Grande's behavior. *See generally* Def. Ex. E (Hammerman McCleary's notes taken during interviews of Littley and Grande)[3], Ex. F (Aff. regarding notes); Def. Ex. I at 10 (Dep. of Michelle Mehler, Southeast Claims Manager) (stating that State Farm concluded that Littley had sent "mixed messages"). On October 3, 1994, Knudsen and Hammerman McCleary interviewed Grande, who suggested that Littley had raised the issue because Grande's romantic relationship with her sister Margaret Littley had ended. *See generally* Def. Ex. E; *see also* Def. Ex. G at 74–76 (Grande Dep. June 4, 1999) (stating that Littley attempted to persuade Grande to reconcile with her sister). While Grande professed surprise at the accusations, Hammerman McCleary's notes indicate that he agreed that many of the incidents had occurred. *See* Def. Ex. E, Ex. F ¶ 5. In any event, State Farm conducted no further investigation.

State Farm decided to separate Littley and Grande, and, on October 4, 1994, Grande was offered a lateral transfer to another office at either Exton or Newtown Square. Plaintiff concedes that he was told that he was transferred because it was easier to transfer him than a secretary. *See* Def. Ex. G at 153–55. On October 6, 1994, Grande requested that he be allowed to transfer to the Doylestown office. State Farm refused this requested and told him to report to Newtown Square on October 17.[4] After taking a week's vacation to consider the matter, Grande decided not to report to Newtown Square, and, on October 25, 1994, State Farm informed Grande by letter that he was fired as of October 19, 1994, for failure to report. *See* Def. Ex. P (termination letter of October 25, 1994).[5]

## II. Discussion[6]

Plaintiff asserts that State Farm committed sex discrimination in violation of

---

2. Although plaintiff objects to this letter as inadmissible hearsay, the court does not consider this letter for the truth of its claims.

3. Plaintiff objects to the court's consideration of these notes because they are "unreliable." The court rejects this contention. Hammerman McCleary's affidavit states that she wrote those notes at the time she interviewed the parties and only reproduces portions of her notes in her affidavit; that is, there is no indication she "filled in" her notes later.

4. There is a factual dispute as to whether Grande actually expressed a preference for Newtown Square, although, in his deposition, he admits that he might have done so. *See* Def. Ex. G at 155.

5. Again, plaintiff challenges this letter as hearsay. The court considers this letter not for the truth of its statements but only as an indication that a termination letter was sent.
   On this point, plaintiff raises numerous hearsay objections to many of defendants' attachments. In those cases in which the court has relied on such documents, the documents are either not hearsay or are not considered for the truth. If the court has made such a finding, it has explicitly so noted. As to the other documents, the court does not rely on them and so need not resolve the issue. Specifically, the court does not rely on Defendant's Exhibit D (the sexual harassment policy), Defendant's Exhibit H (memorandum explaining transfer); Defendant's Exhibit L (memorandum memorializing conversation); Defendant's Exhibit M (memorandum discussing transfer); or Defendant's Exhibit O (company's absent-without-leave policy). The court stresses that it is not making a ruling that plaintiff's objections are warranted.

6. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of mate-

the Pennsylvania Human Relations Act (PHRA). *See* 43 Pa. Stat. Ann. § 951 *et seq.* Plaintiff argues that State Farm constructively discharged him by its decision to transfer him, rather than Littley, to Newtown Square or Exton, rather than to Doylestown. Defendant argues that the court must grant summary judgment because (1) plaintiff cannot establish a prima facie case of sex discrimination; (2) plaintiff cannot show that State Farm's actions were a pretext for discrimination; and (3) plaintiff is not entitled to damages. The court concludes that there is no genuine issue of material fact as to plaintiff's failure to establish a prima facie case of discrimination and that there is no genuine issue of fact regarding whether State Farm's actions were a pretext for discrimination.

### A. Standards

This action is brought under the PHRA, which makes it an "unlawful discriminatory practice" for an employer to discriminate on the basis of sex. 43 Pa. Stat. Ann. § 955(a). Pennsylvania courts have generally interpreted this statute in accordance with the standards applied to claims brought under Title VII of the Civil Rights Act of 1964. *See, e.g., Knabe v. Boury Corp.*, 114 F.3d 407, 410 n. 5 (3d Cir.1997); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996); *Hoy v. Angelone*, 456 Pa.Super. 596, 691 A.2d 476, 480 (1997).

When, as in this case, a plaintiff alleges disparate treatment, he typically presents his case using the burden shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Anderson v. Haverford College*, 868 F.Supp. 741, 744 (E.D.Pa.1994). Both parties agree, at least implicitly, that this test should apply here. Grande can succeed on this theory only if he can prove, by a preponderance of the evidence, a prima facie case of discrimination.

■ To establish a prima facie case, Grande must establish that (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly-situated females more favorably.[7] *See Ezold v. Wolf, Block*, 983 F.2d 509, 523 (3d Cir. 1992); *Anderson*, 868 F.Supp. at 744; *see also Taylor v. PHRC*, 681 A.2d 228, 231 (Pa.Commw.1996) (noting that Pennsylvania has adopted *McDonnell Douglas* framework for cases brought under section 5(a) of the PHRA and applying same test); *Kryeski v. Schott Glass Tech.*, 426 Pa.Super. 105, 626 A.2d 595, 597–98 (1993) (applying same test). Even though this is a claim of reverse discrimination, in accordance with recent Third Circuit precedent, the court may not apply a heightened pleading standard. *See Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir.1999).

If a plaintiff does establish a prima facie case, the burden of production shifts to the

---

rial fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

7. As the Third Circuit has noted, the precise contours of these elements will change depending on the particular claim asserted. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir.1999). Although the plaintiff frames his claim at least in part as a constructive discharge case, it is appropriate to ask whether he suffered any adverse employment action, as the Third Circuit has indicated that actions such as transfers and demotions may establish a prima facie case, *see id.* at 411–12, as discussed in more detail subsequently.

defendant to assert a legitimate, nondiscriminatory reason for the allegedly discriminatory action. If the defendant makes this showing, the burden shifts back to the plaintiff to rebut those reasons. *See Anderson*, 868 F.Supp. at 744.

### B. Prima Facie Case

Defendant concedes that the plaintiff establishes the first two components of a prima facie case. Plaintiff fails, however, to establish that there is a genuine issue of material fact as to the third and fourth components.

#### 1. Lack of an Adverse Employment Action

First, the court agrees that Grande suffered no adverse employment action, even taking all of his claims to be true. As described previously, following the interviews with Littley and Grande, State Farm offered Grande a transfer to either Newtown Square or Exton. Plaintiff argues that the long commute to Newtown Square, plus the fact that he believed himself to be unjustly accused, made such a transfer an adverse employment decision.

■ To be an adverse action, an employment decision must be "serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment[.]" *Robinson v. Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (discussing standard in context of retaliatory discharge). Contrary to the defendant's assertion that a lateral transfer can never constitute an actionable employment decision, the Third Circuit has stated that, "It is clear . . . that a transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action." *Torre v. Casio, Inc.*, 42 F.3d 825, 831 n. 7 (3d Cir.1994). In *Torre*, for example, the court suggested that there was a material fact as to whether plaintiff had been transferred to "a dead-end job that had effectively been eliminated before he was transferred to it" or whether "his transfer and termination were part and parcel of the same allegedly discriminatory scheme." *Id.; see also Boykins v. Lucent Tech., Inc.*, 78 F.Supp.2d 402, 415 (E.D.Pa. 2000) (noting that transfers are not automatically immune from scrutiny).

■ In this case, however, no such qualifying circumstances exist: plaintiff has presented no evidence suggesting that the transfer was anything but a full-fledged job. Plaintiff conceded in his deposition testimony that he did not believe the transfer was a first-step towards a termination or demotion. *See* Def. Ex. G at 153–54, 179–80. While this statement is obviously not dispositive, it is telling, given that plaintiff has provided no evidence suggesting that his pay, promotion, or other benefits would have been harmed by transfer to Newtown Square. In fact, in his deposition testimony, he conceded that there would have been no difference in pay or benefits and that he could have performed the job, which would have had the same title. *See id.* at 209–10. He also stated that he could have made the commute to Newtown, *see id.* at 187–88, although he stressed that the drive would have been longer. *See id.* at 188–89, 210. Grande also indicated that he would have accepted a transfer to Doylestown and would not have considered it a punishment to the same degree, *see id.* at 190–91, 194–95, although he emphasized that he believed he still would have been a victim of sex discrimination. *See id.* at 195. Part of his rationale for accepting a transfer to Doylestown was that he believed it would be less likely that people there would discover the reasons for transfer or judge him harshly if they did. *See id.* at 194.

In these circumstances, the court agrees there has been no adverse employment decision. While the court does not minimize the effect of a lengthened commute or feelings of ill-treatment, without some evidence of actual harm to plaintiff's career or some indication that he could not perform the job, these factors do not cre-

ate a prima facie case. *See, e.g., Mitura v. Daulton,* Civ. A. No. 98–2006, 1999 WL 163629, at *3 (E.D.Pa. Mar.18, 1999) (stating that a "purely lateral transfer, which does not involve a change in pay or a demotion in any other form, does not constitute an adverse employment action"); *Boykins,* 78 F.Supp.2d at 415 (granting summary judgment when plaintiff claimed discrimination based on transfer because he showed no evidence that he suffered any harm in pay or future benefits).

■ Plaintiff argues that he was constructively discharged. He claims that State Farm knew that living close to his work was very important to him and that he was in the process of purchasing a home near his office. *See* Plf. Ex. at 150–151 (Grande Dep.), Def. Ex. G at 179. Grande refers to deposition testimony where he suggests that State Farm might have wanted him to resign, although the court notes that, immediately following that statement, he agreed that Kang had attempted to persuade him to stay with State Farm. *See* Def Ex. G at 179–80. These claims could not establish constructive discharge. Constructive discharge occurs only when an "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys., Co.,* 747 F.2d 885, 888 (3d Cir.1984); *see also Kroen v. Bedway Sec. Agency, Inc.,* 430 Pa.Super. 83, 633 A.2d 628, 633 (1993) (constructive discharge exists when "the employer makes working conditions so intolerable that the employee is forced to resign") (citations omitted). "To make this showing, more than subjective perceptions of unfairness or harshness or a stress-filled work environment are required." *McLaughlin v. Rose Tree Media School Dist.,* 52 F.Supp.2d 484, 493 (E.D.Pa.1999).

The simple increase in the commuting distance is not enough to find constructive discharge, even combined with Grande's feelings that he was being unfairly treated. For example, this case may be easily distinguished from *Goss,* in which the Third Circuit found constructive discharge of a commissioned saleswoman when, following explicit statements by the company that motherhood was incompatible with the job, the employer transferred her to a region that was much less lucrative than the one to which she had been assigned. *See id.* at 888–89. While Grande may have found the distance impossible to tolerate, and so chose to resign, the test looks to the reasonable person. *See DiIenno v. Goodwill Indus.,* 162 F.3d 235, 236 (3d Cir.1998) (stating that while an employer cannot transfer an employee to a job the employee cannot do, "a desire to live in a certain city" is not a job-related factor supporting a claim of constructive discharge). Similarly, subjective feelings, on their own, are insufficient to find constructive discharge.

In short, defendant has demonstrated that there is no genuine issue of material fact as to whether plaintiff suffered an adverse employment action, a necessary component of a prima facie case.

2. Whether Plaintiff was Treated Unfavorably because of Sex

■ Although women are also obviously a protected class, the plaintiff's burden in this case would be to show that similarly situated women were treated more favorably than him. Plaintiff has offered no evidence to suggest that this was the case.

Initially, in deposition testimony, Grande stated that he did not believe that State Farm had previously discriminated against him based on his sex, and, as to other men, he made only a vague reference to having heard once that "quotas" stopped white men from receiving promotion. *See* Def. Ex. G at 61–64 (Feb. 4, 1999), 75, 95 (June 14, 1999). This reference to "quotas" is the only evidence that plaintiff purports to offer in support of past discrimination.[8] In

---

8. In his response to the motion for summary judgment, plaintiff states that he "testified

response to specific questioning regarding sexual harassment, he stated that he did not have any information regarding State Farm's treatment of other men or women who had been accused of sexual harassment. *See id.* at 137–38. Thus, the only basis for plaintiff's claim of sex discrimination is that he was treated less favorably than Martha Littley, an individual who claimed that she was being sexually harassed.[9]

State Farm candidly states that it decided to transfer Grande because of the allegations made by Littley: although State Farm did not necessarily conclude that he was guilty of sexual harassment given Littley's own ambivalent responses to his actions, it did conclude that he had acted inappropriately and that the parties could not remain in the same workplace. *See, e.g.,* Def. Ex. I at 9–10 (Michele Mehler Dep.) (stating that decision to separate Littley and Grande stemmed from Littley's allegations of inappropriate behavior); Def. Ex. J at 33–35 (Hammerman McCleary Dep.) (stating that State Farm decided to transfer Grande to separate the parties).

■ Grande has not, however, shown that he was treated differently from a similarly situated woman also accused of sexual harassment and found to have acted inappropriately. In making his comparisons, plaintiff must "establish that the other employee's acts were of comparable seriousness to his own" and that the other employee "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their

conduct or the employer's treatment of them for it." *Anderson*, 868 F.Supp. at 745 (citations, internal punctuation omitted); *see also Dill v. Runyon,* Civ. A. No. 96–3584, 1997 WL 164275, at * 4 (E.D.Pa. Apr.3, 1997) (stating that parties must be "materially" similar).

The court concludes that Littley and Grande were not similarly situated, and that any difference in their treatment consequently does not support a claim of sex discrimination. First, there is the obvious difference in the status of the two parties: Grande was a supervisor, Littley was a secretary under his supervision. It is not discriminatory for an employer to consider the respective positions of two individuals accused of wrongdoing in deciding the appropriate reaction. Second, Grande cannot ignore the fact that he was the accused. Plaintiff attempts to argue that he and Littley were similarly situated because both were ultimately found to have behaved inappropriately, but this does not account for the different nature of the wrongdoing. That is, he was not similarly situated by virtue of admitting to actively inappropriate workplace behavior, in contrast to Littley's passive "misbehavior" of giving mixed messages. *See Brogan v. LaSalle University,* 70 F.Supp.2d 556, 566 (E.D.Pa.1999) (noting that difference in status of parties may appropriately lead employer to treat complaints differently).

Thus, plaintiff also fails to establish that there is a genuine issue of material fact as to the fourth component of the prima facie test.

---

that he heard in the course of his employment that women were often promoted over men, and men were generally the ones transferred in cases of alleged harassment." Resp. at 18. While the court believes that the reference to promotion is found at pages 62–63 of plaintiff's deposition, it is unable to find any comment regarding males being transferred more than women if they were accused of harassment. Even if the court were able to do so, this would be insufficient to defeat a motion for summary judgment without other support.

9. Even on this point, plaintiff is somewhat equivocal. He conceded in his deposition testimony that an employer would understandably wish to treat allegations of sexual harassment seriously, *see* Def. Ex. G at 139, and suggested that he had no proof of allegations of sex discrimination against men. *See id.* at 137. Admittedly, his testimony did consistently express his belief that the company transferred him, regardless of its supposed lack of evidence, because it was more fearful of a subsequent lawsuit from Littley than from him. *See id.* at 138.

## B. Pretext

Assuming *arguendo* that the plaintiff establishes a prima facie case, the defendant then has a burden to advance some legitimate, nondiscriminatory reason for its action. An employer "satisfies its burden of production by introducing evidence, which taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie,* 32 F.3d 759 (3d Cir. 1994) To defeat summary judgment once the defendant has articulated such a reason, the plaintiff must point to some evidence "direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764; *see also Brogan,* 70 F.Supp.2d at 567 (same). It is not enough for the plaintiff to show that the "employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765.

■ The court need not engage in analysis of the quantum of proof adduced by plaintiff, because he has presented no evidence suggesting that the reason that State Farm transferred him, rather than Littley, was because he was a man. State Farm has provided evidence stating that it did not transfer secretaries, that it had frequently transferred claims specialist, and that it offered the two choices to Grande based on the fact that there were jobs available. *See* Def. Ex. J at 34–35 (Hammerman McCleary Dep.) (stating that secretaries are not ordinarily transferred); Def. Ex. K (Aff. of Mark Hurley, Human Resources Manager) (stating that

secretaries are not transferred but that claims representatives frequently are). The only response by plaintiff is a reference to his deposition testimony saying that *he* believed that Littley could have been transferred and that claims representatives were not typically transferred. *See* Def. Ex. G at 169–71. Grande conceded, however, that he had moved twice, *see id.,* and provided no evidence in support of his claim that secretaries were transferred.[10]

Also, even if the court accepts plaintiff's allegations that State Farm did not conduct a thorough investigation and that it transferred Grande only because he was the alleged perpetrator of sexual misconduct, this does not indicate that the transfer was a pretext for sex discrimination. As the *Brogan* court noted, the Supreme Court has ruled that a sex discrimination claim is not barred by the simple fact that the plaintiff and the defendant are of the same sex. *See Brogan,* 70 F.Supp.2d at 564 (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). That is, "even if [plaintiff's] evidence were enough to raise a reasonable inference that defendants distinguished him because he had been accused of sexual discrimination, this remains insufficient to demonstrate sex-based discriminatory intent because either a man or a woman could have discriminated against [Littley] ... and been subjected to exactly the same actions of which [plaintiff] complains." *Brogan,* 70 F.Supp.2d at 567 (citation omitted). In other words, an alleged harasser could have been male or female, and thus generally harsher treatment towards alleged perpetrators would not run afoul of the sex discrimination laws. Plaintiff does not provide any evidence that bridges the gap between harsh treatment of one accused of

**10.** Plaintiff repeatedly cites to Hurley's statement that records of transfers were not ordinarily kept as evidence of pretext. *See* Def. Ex. E ¶ 4. The court sees no basis for this inference. Plaintiff also states repeatedly that "an employee" stated in deposition testimony that State Farm did not keep records of discrimination claims. Plaintiff does not identify this employee, much less attach such a deposition; even if he did, the court is unclear as to why this would lead to the conclusion that State Farm acted pretextually here.

sexual harassment and harsh treatment of men.

### III. Conclusion

Defendant has demonstrated that there is no genuine issue of material fact on at least two aspects of the plaintiff's prima facie case. Defendant has also demonstrated that there is no genuine issue of material fact as to whether plaintiff was transferred for pretextual reasons. Consequently, the court will grant summary judgment in favor of the defendant.

An appropriate order follows.

### ORDER

**AND NOW**, this 18th day of February, 2000, upon consideration of Defendant's Motion for Summary Judgment, and the response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.