Christian AUDENREID,

v.

CIRCUIT CITY STORES, INC.

No. CIV.A. 98–CV–6611.

United States District Court,
E.D. Pennsylvania.

May 23, 2000.

Anne P. Felker, Bethlehem, PA, for Plaintiff.

Stacey A. Scrivani, Reading, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This case has been brought before the Court on motion of the Defendant, Circuit City Stores for the entry of summary judgment in its favor as to all of the Plaintiff's claims against it. After carefully re-

viewing the record evidence adduced by the parties and for the reasons which follow, we shall grant the defendant's motion.

### Factual Background

Christian Audenreid was employed by Circuit City in its store in Allentown, Pennsylvania from 1990 until January, 1997. He quickly progressed through the ranks, having been promoted from his initial position as ACE sales counselor to sales lead in the computer department to computer manager to sales manager to operations manager. In late 1996, Plaintiff's store was audited. The results of the audit reflected a below average performance in the area of operations, excellent performance in warranty compliance and poor performance in the area of inventory control. In addition to these problems, the store was experiencing an ongoing cash shortage problem. Investigation revealed that at various cash registers around the store, merchandise was recorded as having been returned for cash when in fact no merchandise had been returned, with the result that cash was effectively being stolen out of the registers. Whenever these instances of theft occurred, the store's video surveillance system had been turned off.

Given that the video system could only be accessed by someone who had access to Plaintiff's office, the loss prevention department decided to place a camera in Mr. Audenreid's office in an effort to determine how the surveillance system was being deactivated. The gravamen of Plaintiff's claim is that he did not know that the loss prevention department had placed this remote surveillance camera in his office until he returned from vacation and observed, on January 10, 1997, a device which appeared to be a motion detector. Upon closer examination, Plaintiff found that it was a camera connected by a coaxial cable leading to the store manager's office. A few days later, Plaintiff also discovered a tape of the OPS manager's office. Although Mr. Audenreid discussed the presence of the camera with Joan Gale and Carla Callahan in the company's Human Resource Department, apparently no efforts were made to remove it.

In and about this same time, on January 13, 1997, the plaintiff received a "Memo of Corrective Action" from Circuit City District Manager Ralph LaSalle for discounting a refrigerator for the parents of one of his store's sales associates on January 3rd in violation of company policy. Although Plaintiff could have been terminated for this action, he instead received only this warning and a copy of this memorandum was placed in his personnel file. It was at this time, however, that Circuit City determined that Mr. Audenreid should be transferred to the position of Operations Manager of the Montgomeryville Store in the hope that this change would help him to develop further as a manager. Specifically, it was the opinion of Defendant's upper level management that since the plaintiff had spent his entire Circuit City career in the Allentown store and had risen fairly quickly through the ranks, he was having difficulty managing his former co-workers. Plaintiff, however, rejected the transfer offer and instead filed this lawsuit contending that he had been wrongfully discharged in violation of both the Federal and Pennsylvania Wiretapping and Electronic Surveillance Control Acts, 18 U.S.C. § 2510, et. seq. and 18 Pa.C.S. § 5701, et. seq. and for his alleged refusal to testify dishonestly before the National Labor Relations Board with respect to a movement to organize Circuit City's employees into a collective bargaining unit.

### Standards Governing Summary Judgment Motions

The standards to be applied by the district courts in ruling on motions for summary judgment are set forth in Fed. R.Civ.P. 56. Under subsection (c) of that rule,

.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affi-

davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, a court is compelled to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir. 1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Aries Realty, Inc. v. AGS Columbia Associates*, 751 F.Supp. 444 (S.D.N.Y.1990).

Generally, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital*, 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169 (E.D.Pa.1990).

Where, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against [it]." Fed.R.Civ.P. 56(e). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and it cannot rely on unsupported assertions, conclusory allegations, or mere suspicions or beliefs in attempting to survive such a motion. *Tziatzios v. U.S.*, 164 F.R.D. 410, 411, 412 (E.D.Pa.1996) citing *Celotex v. Catrett, supra*, 477 U.S. at 325, 106 S.Ct. at 2553–54, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3rd Cir.1989).

### *Discussion*

**1. Plaintiff's claims under the Wiretapping and Electronic Surveillance Control Acts.**

In Counts I and II of his complaint, Plaintiff invokes both the federal and state wiretapping control acts in claiming that Defendant unlawfully "intercepted, disclosed and/or used [his] wire and oral communications." The focus and purpose of the Wiretapping and Electronic Surveillance Control Acts is the protection of privacy and the language of these statutes is virtually identical. *See: Commonwealth v. Parrella*, 416 Pa.Super. 131, 137, 610 A.2d 1006, 1009 (1992). Specifically, the federal Act, 18 U.S.C. § 2510 defines "intercept," "oral communication" and "wire communication" as follows:

(1) "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications affecting interstate or foreign commerce and such term includes any electronic storage of such communication;

(2) "oral communication" means any oral communication uttered by a person

exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;
..........

(4) "intercept" means the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device; .....

Under the Pennsylvania Act, 18 Pa.C.S. § 5702,

"Wire communication" is [a]ny aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier. The term includes any electronic storage of such communication.

"Oral communication" is [a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication.

"Intercept" is the [a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication are monitored by investigative or law enforcement officers.

Both statutes define "aural transfer" to mean "[a] transfer containing the human voice at any point between and including the point of origin and the point of reception." Thus, those courts which have had occasion to interpret these statutes have held that to fall within the confines of the wiretapping control acts, the interception must involve the acquisition of the contents of a conversation, *i.e.*, the actual hearing of sound. *See, e.g., United States v. New York Telephone Company*, 434 U.S. 159, 166–167, 98 S.Ct. 364, 369 54 L.Ed.2d 376 (1977)("[p]en registers do not intercept because they do not acquire the contents of communications as that term is defined by 18 U.S.C. § 2510(8)"); *United States of America v. Cheely*, 814 F.Supp. 1430, 1441 (D.Alaska 1992)("[r]ecording devices do not accomplish the interception, they merely record a conversation that has already been intercepted"); *United States v. Seidlitz*, 589 F.2d 152, 157 (4th Cir. 1978)(no evidence to suggest that the "Milten Spy" device at issue relied in any fashion upon sounds in retrieving information from the computers in written form); *Michigan Bell Telephone Company v. United States of America*, 565 F.2d 385, 388 (6th Cir.1977)("[t]races, like pen registers, neither hear nor monitor conversations").

■ In this case, the evidence produced by the parties clearly demonstrates that the video camera which had been installed in the plaintiff's office recorded no sound and that the videotape created by that camera shows only the movements of the people in that office. (See, e.g., Defendant's Exhibit Nos. "J" and "K"). Plaintiff himself acknowledged in his deposition testimony that the tape had no sound. (Pl's Dep., 10/5/99, at p. 222). In the absence of any record of "a human voice at any point between and including the point of origin and the point of reception," as is required for an "aural transfer," we can reach no other conclusion but that the U.S. and Pennsylvania Wiretapping and Electronic Surveillance Control Acts have no application here and that the defendant did not violate either of these acts in placing the video camera in Plaintiff's office. Summary judgment must therefore be granted in favor of the defendant on Counts I and II of the plaintiff's complaint.

### 2. Plaintiff's Claim for Wrongful Discharge.

In Count III of his complaint, Plaintiff seeks compensatory and punitive damages

under the common law theory of wrongful discharge. In this regard, Plaintiff asserts that the defendant's decision to transfer him from the Allentown store to the Montgomeryville store had the effect of constructively discharging him for raising his constitutional right to privacy and for refusing to testify falsely at a hearing before the National Labor Relations Board.

■ The law in Pennsylvania has long held that an employer may terminate an employee for any reason or no reason unless restrained by contract. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283 (Pa.2000) citing *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891). It is thus the general rule in Pennsylvania that no common law cause of action exists against an employer for termination of an at-will employment relationship. *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 237, 622 A.2d 355, 358 (1993). Where, however, an employee can show that he or she was terminated in violation of a clear mandate of public policy, a cause of action may be stated. *Geary v. United States Steel Corp.*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974). Examples of a public policy violation arise where (1) an employer requires an employee to commit a crime, (2) an employer prevents an employee from complying with a statutory duty, or (3) a statute prohibits discharge. *Denton v. Silver Stream Nursing and Rehabilitation Center*, —— Pa.Super. ——, 739 A.2d 571, 577 (1999); *Shick v. Shirey*, 552 Pa. 590, 595, 716 A.2d 1231, 1233 (1998). Moreover, to establish constructive discharge, a plaintiff must demonstrate that the employer permitted conditions of discrimination so intolerable that a reasonable person would have felt compelled to resign. *DiRenzo v. General Electric Company*, 1993 WL 534227, 1993 U.S.Dist.LEXIS 18153 at *19 (E.D.Pa. 1993), citing *Spangle v. Valley Forge Sewer Authority*, 839 F.2d 171, 173 (3rd Cir. 1988). *See Also: Goss v. Exxon Office Systems, Co.*, 747 F.2d 885, 888 (3rd Cir. 1984). Specific intent on the part of the employer to bring about the discharge is not required; however, to make a showing of constructive discharge, more than the subjective perceptions of unfairness or harshness or a stress-filled work environment are required. *Grande v. State Farm Mutual Automobile Insurance Co.*, 83 F.Supp.2d 559, 564 (E.D.Pa.2000); *McLaughlin v. Rose Tree Media School District*, 52 F.Supp.2d 484, 493 (E.D.Pa. 1999).

■ Applying the preceding legal principles to this case, we find that the defendant is also entitled to the entry of judgment in its favor as a matter of law with regard to plaintiff's claim for wrongful discharge.

According to the plaintiff, he believed that, in transferring him to the identical position in the smaller, Montgomeryville store, (which, while further away, was evidently within commuting distance of his home in Nazareth, Pa.), he was being demoted and he couldn't accept this. (Pl's Dep., 10/5/99, pp. 240–248). However, it is clear from this record that Circuit City Management believed the transfer was in Plaintiff's best interests in that it would help him to further develop his management skills to manage a new group of employees with whom he did not at one time have peer relationships. The record also clearly reflects that Circuit City offered Plaintiff the option of an increase of $2,500 in annual pay to offset his increased commuting costs or its standard re-location package. Plaintiff rejected these offers not once, but again several months later when Circuit City again offered him the Montgomeryville job. At least two courts have held that neither a simple increase in commuting distance nor a demotion are sufficient grounds to find constructive discharge and we agree. The working conditions which plaintiff faced simply were not so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign. *See: Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 273–274 (7th Cir.1996);

*Grande v. State Farm, supra.* We therefore conclude that the plaintiff here was not constructively discharged, but instead voluntarily resigned from his position with Circuit City.

Likewise, there is no evidence to support Plaintiff's contention that he was transferred because he refused to testify falsely before the NLRB or because he sought to enforce his constitutional right to privacy. Again, there is no evidence that the videotape in his office intercepted any of plaintiff's conversations nor is there any evidence that he was ever called to testify on behalf of the company before the Labor Relations Board. (Pl's Dep. 7/14/99, pp. 174–176). Accordingly, even giving Plaintiff the benefit of the doubt that he was discharged, there is insufficient evidence to support his claim that his discharge was in violation of a clear mandate of public policy.

For all of the foregoing reasons, the defendant's motion for summary judgment shall be granted in accordance with the attached order.

## ORDER

AND NOW, this __ day of May, 2000, upon consideration of the Motion for Summary Judgment of Circuit City Stores, Inc. and Plaintiff's response thereto, it is hereby ORDERED that the Motion is GRANTED for the reasons set forth in the preceding Memorandum Opinion.