**Brigitte SHRAMBAN, Plaintiff,**

**v.**

**AETNA and Joe Kushnerick, Defendants.**

**No. CIV.A. 02–CV–444.**

United States District Court, E.D. Pennsylvania.

May 16, 2003.

Tova Weiss, Blitshtein & Weiss, P.C., Brooklyn, NY, for Plaintiff.

Eric J. Bronstein, Elliott Reihner Siedzikowski & Egan, Union Meeting Corporate Center V, Blue Bell, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court are the Motions for Summary Judgment of Defendants Aetna and Joe Kushnerick. In this case, Plaintiff Brigitte Shramban ("Plaintiff") brings discrimination claims on the basis of race, sex, religion and national origin against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. Ann. § 951 *et seq.*[1] Plaintiff also alleges retaliation and a hostile work environment. Additionally, Plaintiff brings a claim of aiding and abetting discrimination under the PHRA. Plaintiff also seeks punitive damages under Title VII. For the reasons that follow, the Court will grant the motions for summary judgment.

### BACKGROUND

Plaintiff is a Caucasian, Jewish female from Moldavia. Since April 2000, she has been employed in Aetna's Quality Assur-

---

**1.** Courts have generally interpreted the PHRA in accordance with the standards applied to claims brought under Title VII of the Civil Rights Act of 1964. *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F.Supp.2d 559, 562 (E.D.Pa.2000). We analyze Plaintiff's Title VII and PHRA claims in Count I and II of her Amended Complaint under the same standards.

ance department as a Business System Delivery Specialist with a 500014 job code. Since the beginning of her employment until July 25, 2001, she worked on the EZLink project at Aetna's Blue Bell, Pennsylvania offices. On July 26, 2001, she was transferred to Aetna's Horsham, Pennsylvania facility to work on a Pharmacy project, where she remained a Business System Delivery Specialist with a 500014 job code.

On April 2, 2001, Plaintiff wrote Diane Ball, a Quality Assurance manager, a letter "to serve as formal notice" to Aetna about a hostile work environment. Plaintiff's complaints centered around working long hours without overtime compensation. Plaintiff alleged that Defendant Kushnerick, the EZLink project supervisor, demanded projects be completed with unreasonable deadlines and also threatened, "if you don't want to work overtime then quit." Plaintiff overheard one of Defendant Kushnerick's conversations and felt that he was creating a conspiratorial atmosphere against her. She also mentioned that she feared Defendant may retaliate against her for voicing her concerns about overtime at a staff meeting because he insisted that she take a compensation day off. In response to Plaintiff's letter, Ball discussed the overtime hours issue with Defendant Kushnerick.

Around June 2001, Plaintiff wrote to Paul Buttacavoli, Aetna Human Resources, to file her second formal complaint against her supervisor, Defendant Kushnerick, as well as a complaint against Diane Ball for failing to take action in response to her first complaint. Specifically, Plaintiff alleged that Defendant Kushnerick caused her "to be embarrassed and humiliated in front of other co-workers and continuously made derogatory comments to [her] regarding [her] ethnicity and religion and . . . is completely outside of what constitutes professional and/or civil conduct." Plain-

tiff has alleged that Defendant Kushnerick asked inappropriate questions or made discriminatory comments about her hair color, her personal relationships, and her Moldavian national origin.

On June 12, 2001, Buttacavoli met with Plaintiff to discuss her complaints, which included being asked personal questions, feeling belittled and being mocked for her Moldavian ethnicity. On June 18, 2001, Buttacavoli continued his investigation by meeting with Defendant Kushnerick. The next day, on June 19, 2001, Plaintiff contacted Aetna's Office of Employment Dispute Resolution regarding her complaints. On June 25 and June 29, 2001, Buttacavoli met with Diane Ball and Plaintiff Shramban in attempts to resolve Plaintiff's concerns and complaints. On July 3, 2001, as part of the on-going investigation, Buttacavoli met with Kyran McLaughlin, another Quality Assurance analyst on the EZLink project. McLaughlin's report of alleged events did not confirm Plaintiff's various allegations that Defendant mimicked Plaintiff's accent and did not inform Plaintiff of her project responsibilities. On July 19, 2001, Diane Ball wrote Plaintiff regarding the dispute resolution, and they also discussed a transfer to Aetna's Horsham office. On July 26, 2001, Plaintiff transferred and joined the Quality Assurance team in Horsham, Pennsylvania.

Plaintiff received her first annual performance review on December 1, 2000, and her overall rating was "Met Expectations." Her subsequent evaluation result for the January to June 2001 time period was also "Met Expectations." On October 4, 2001, Plaintiff filed a Charge of Discrimination with the EEOC. On January 22, 2002, Plaintiff received a letter informing her that she would not receive a pay increase and also would not receive a year-end performance incentive bonus.

Plaintiff alleges discrimination and retaliation in violation of Title VII and the PHRA. Defendants now move for summary judgment on all claims, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

## DISCUSSION

### I. *Legal Standard*

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### II. *Plaintiff's Hostile Work Environment Claim*

■ Plaintiff alleges that Defendant Kushnerick created a hostile work environment with discriminatory conduct and comments and that Defendant Aetna failed to respond to her complaints of racial, sexual, religious and national origin discrimination and harassment and prevented Plaintiff from advancing in her employment position. Defendant Aetna contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on the hostile work environment claim.

■ In order to establish a hostile work environment claim, Plaintiff must prove five elements: "(1) the employee suffered intentional discrimination because of [membership in a protected group]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [protected group] in the same position; and (5) the existence of respondent superior liability." *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 295 (3d Cir.1999)(citing *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990)). In determining whether an environment is sufficiently hostile or abusive, courts must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

### 1. **Intentional Discrimination**

■ "Simple teasing, offhand comments, and isolated incidents (unless ex-

tremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788, 118 S.Ct. 2275. "Verbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender (or membership in other protected groups)." *Koschoff v. Henderson,* 109 F.Supp.2d 332, 346 (E.D.Pa.2000)(citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

Viewing all facts and reasonable inferences in a light most favorable to Plaintiff, we find that the Plaintiff has failed to produce enough evidence beyond her allegations and her deposition testimony that creates a sufficient issue in material fact which a jury must resolve. Plaintiff alleges, inter alia, that Defendant Kushnerick made discriminatory comments, regarding "Plaintiff's hair color, the only way to tell a natural blond, what people say about blonds, personal questions about Plaintiff's boyfriend/husband, Plaintiff's 'Russki way', Plaintiff's 'Moldavian way'", "mimicked Plaintiff's accent", and belittled Plaintiff by saying she "made a boo-boo." Pl.'s Mem. Supp. Summ. J. at 5. While Defendant's various alleged comments and questions may be viewed as offensive, disparaging, unprofessional and in poor taste, we conclude that they are insufficient to prove that the harassment of Plaintiff was motivated by gender, race, religion or national origin. We also note that being blonde is not a protected group under Title VII. We find that Defendant Kushnerick's comments, if taken as true, may be considered too personal in the professional working context as well as immature teasing or taunting, however, they do not rise to a level that constitutes a hostile work environment. Therefore, Plaintiff has not shown a dispute of material fact that she was subjected to intentional discrimination.

## 2. Pervasive and Regular Discrimination

 In order to establish a hostile work environment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "Harassment is pervasive when 'incidents of harassment occur either in concert or with regularity.'" *Andrews,* 895 F.2d at 1484. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris,* 510 U.S. at 21, 114 S.Ct. 367.

The conduct and comments in question span a period of time of over an year. The alleged harassment of Plaintiff did not occur with the frequency sufficient to be considered pervasive or regular. In addition, incidents of Defendant's alleged harassing behavior, such as improper personal comments and mimicking Plaintiff's accent, were neither severe nor sufficiently continuous, concerted or prolonged to alter conditions of employment as required by a hostile work environment claim.

## 3. Subjective Effect of Discrimination

Plaintiff's testimony is that she cried, suffered emotional distress, sought medical assistance from a psychiatrist, and was stressed at work because of the hostile work environment. Furthermore, Plaintiff wrote several complaint letters regarding her belief that her work environment was hostile. We find that the discrimination detrimentally affected Plaintiff.

### 4. Objective Effect of Discrimination

"The objective standard protects the employer from the 'hypersensitive' employee, but still serves the goal of equal opportunity by removing the walls of discrimination that deprive women [or a protected group member] of self-respecting employment." *Andrews*, 895 F.2d at 1483.

Viewing the totality of the circumstances, we find no evidence or issue of material fact that Plaintiff's manager's behavior was objectively offensive as to create an abusive working environment. Plaintiff points to the deposition testimony of co-workers Karen Adams and Madhu Dhingra; however, their testimony does not support a finding that the discrimination would detrimentally affect a reasonable person of the same race, religion, gender and national origin in the same position. Karen Adams testified that Plaintiff was "upset" about a "Moldavia" comment and about the heavy workload. *See* N.T., 11/06/02 of Adams, 18–23. Madhu Dhingra testified about Defendant mimicking accents but essentially described them as jokes in poor taste. *See* N.T., 1/15/03 of Dhingra, 101. Plaintiff may have been upset to the point of suffering emotional distress as a result of Defendant Kushnerick's comments, however, even viewing the facts in a light most favorable to Plaintiff, the conduct alleged by Plaintiff does not rise to the level of hostility proscribed by Title VII. *See, e.g., Pittman v. Continental Airlines, Inc.*, 35 F.Supp.2d 434, 442 (E.D.Pa.1999)("The actionable facts, even viewed in the light most favorable to Plaintiff, do not show that Plaintiff suffered unwanted sexual advances, improper touching, insults, unreasonable criticism, the appearance of sexual imagery or pornography, obscene language or gestures, or any significant intrusions of a sexually hostile nature."). We find a lack of evidence demonstrating the objective element of a hostile work environment claim. In fact, there is record evidence that indicates Plaintiff was a "hypersensitive employee" and a reasonable person in a similar position would not find the alleged comments objectively hostile. *See* Def. Ex. 21, E-mail from Kyran McLaughlin to Diane Ball (June 14, 2001, 01:45 EST) ("[I]n my opinion, there was absolutely nothing that happened in that meeting that could have been misinterpreted as 'mimicking' or 'making fun.' ").

### 5. Respondeat Superior Liability

"In determining whether an employer is liable for a sexually hostile environment, the court is instructed to look to agency principles for guidance in this area." *Andrews*, 895 F.2d at 1486. "Liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action. Thus, if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." *Id.* Plaintiff argues that Defendant Aetna was on notice of the alleged discrimination and harassment but failed to stop the offensive conduct in the face of her complaints. We find, however, that Plaintiff's employer properly and promptly responded to her complaints in accordance with company policy. Defendant Aetna responded with investigatory actions taken by Aetna Human Resources employee, Paul Buttacavoli, and Quality Assurance Manager, Diane Ball. We find that Defendant Aetna investigated and appropriately handled Plaintiff's allegations and complaints.

For the reasons stated above, we conclude that no reasonable factfinder, with the evidence presented before this Court, could find that Plaintiff can establish a claim for a hostile work environment.

Since Plaintiff has failed to present a triable issue of fact for four of the five elements, summary judgment is warranted for the hostile work environment claim.

### III. *Plaintiff's Discrimination and Retaliation Claim*

Plaintiff does not oppose Defendants' Motion for Summary Judgment on Plaintiff's race discrimination claim. We consider the remaining claims of discrimination and retaliation. Plaintiff alleges that she was deprived of opportunities and her status as an employee was adversely affected based on her sex, religion, and national origin. She also contends that she was denied a monetary bonus after she filed complaints with Defendant Aetna and a Charge of Discrimination with the EEOC.

#### 1. Discrimination Based on Sex, Religion and National Origin

In order to establish a prima facie case of discrimination under Title VII, and thus under the PHRA, a plaintiff must demonstrate the following elements: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) that non-members of the protected class were treated more favorably.[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F.Supp.2d 559, 562 (E.D.Pa. 2000).

■ Defendant Aetna concedes for the purposes of these motions that Plaintiff is able to establish the first two elements of the prima facie case. Under the facts before the Court, Plaintiff fails to demonstrate that she suffered any adverse employment action. Plaintiff contends that she was demoted and/or transferred to another facility in retaliation, however, we find that Plaintiff's transfer to another project team at Aetna's Horsham facility was not an adverse employment action. Plaintiff was not demoted to a lower job code position and Plaintiff's duties and position remained substantially the same on her new project. Her pay and her opportunities for advancement in the company were not diminished. We find that Plaintiff's employment conditions, privileges and opportunities were not adversely affected.

■ Although Plaintiff did not raise the allegation of being denied a monetary bonus at the end of the 2001 year in her Amended Complaint, we still address the issue in this motion. We find that Plaintiff has failed to raise an issue of material fact that the denial of a discretionary year-end bonus or pay raise were discriminatory actions based on her membership in a protected class. There is no evidence that other employees, similarly situated, were treated more favorably with regard to pay decisions. Therefore, since no reasonable factfinder could find that Plaintiff can establish a prima facie case, summary judgment is granted with regard to Plaintiff's discrimination claims.

#### 2. Retaliation

■ "To establish discriminatory retaliation under Title VII, a plaintiff must

---

**2.** The elements of a prima facie case will often depend on the factual contours of a particular case. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir.1999). Although Plaintiff vaguely asserts that Plaintiff was treated disparately from her male colleagues, we find no evidence to support this claim. Therefore, we address Plaintiff's discrimination claim through the lens of adverse employment action.

Additionally, since we conclude that Plaintiff fails to establish a prima facie case, we need not address the remaining burden-shifting analysis of *McDonnell Douglas*.

demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997). Plaintiff argues that her evaluations were consistently "Met Expectations," but she received a pay decision rating of "1" only after she lodged her complaints about discrimination and a hostile work environment. As noted above, we find that Plaintiff has not demonstrated any issue of material fact that Defendant Aetna took an adverse employment action against her. For this reason alone, Plaintiff's prima facie case for retaliation fails. Additionally, Plaintiff fails to demonstrate an inference of causal connection. "A causal connection can be demonstrated when adverse action closely follows protected activity, thereby justifying the inference of retaliatory motive." *Cooper–Nicholas v. City of Chester*, No. 95–6493, 1997 WL 799443, at *6 (E.D.Pa. Dec. 30, 1997)(citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989)).

Plaintiff was transferred to a new project on July 26, 2001. Her last evaluation before the transfer was for the time period from January to June 2001. Plaintiff received an overall performance rating of "Met Expectations," and Plaintiff was not dissatisfied with the rating and signed the evaluation. Her next evaluation was on October 26, 2001 with her new manager, Holly Russell, on the Pharmacy project. Plaintiff was also satisfied with this evaluation. We find that Plaintiff fails to demonstrate an issue of fact that a factfinder could infer a causal connection between her participation in protected activity before her transfer in July 2001 and the pay decision memorandum on January 22, 2002. *See Woods v. Bentsen*, 889 F.Supp. 179, 187–88 (E.D.Pa.1995)(following other

courts that "generally hold that if at least four months pass after the protected action without employer reprisal, no inference of causation is created"). Although Plaintiff's EEOC complaint in October 2001, which has closer temporal proximity to Plaintiff's "poor performance letter" of January 22, 2002, Plaintiff fails to allege any evidence of "an intervening pattern of antagonism and retaliation that would support an inference of a causal link." *Id.* at 188.

Therefore, since we conclude that Plaintiff fails to establish a prima facie case for discriminatory retaliation, summary judgment is also appropriate for Plaintiff's retaliation claims under Title VII and the PHRA.

## IV. *Plaintiff's Punitive Damages Claim*

A plaintiff may recover punitive damages for violations of Title VII "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

Plaintiff alleges that Defendants were aware of hostile and offensive conduct Plaintiff was subjected to, but despite their knowledge, Defendants took no remedial measures to address the alleged harassment and discrimination. Plaintiff points to record evidence to show that she filed numerous complaints but Defendant Aetna failed to prevent discriminatory conduct. We find, however, that there is no evidence that Defendant Aetna acted with malice or with reckless indifference in regard to a federally protected right. Punitive damage liability cannot be imputed vicariously when the employer makes good faith efforts to prevent and comply with Title VII. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). We find that the rec-

ord demonstrates that Aetna's human resource department and Plaintiff's managers made numerous good faith efforts to address Plaintiff's complaints. It is also clear that Defendant Aetna had policies and procedures designed to prevent and remedy alleged harassment and discrimination. Human resource personnel and managers met with Plaintiff and investigated her allegations. Ultimately, after numerous attempts at addressing Plaintiff's concerns and complaints, Defendant Aetna resolved the grievances by transferring Plaintiff to another project within the company. Therefore, since there is no issue of material fact and Plaintiff fails to show that she is entitled to punitive damages under Title VII, we grant Defendant Aetna's motion for summary judgment on Plaintiff's request for punitive damages.

V. *Plaintiff's Count III Claim of Aiding and Abetting Discrimination Under the PHRA*

Since we find that there has been no violation under the PHRA, we need not address whether Defendant Kushnerick is a supervisory employee under PHRA § 955(e) and whether he is liable for aiding and abetting discriminatory practices of the employer.

Therefore, since there is no genuine issue of material fact even when viewed in a light favorable to Plaintiff and Defendants are entitled to judgment as a matter of law, summary judgment is granted on all of Defendants' motions.

### CONCLUSION

An appropriate Order follows.

### *ORDER*

AND NOW, this 16th day of May, 2002, upon consideration of the Defendants Aetna and Joe Kushnerick's Motions for Summary Judgment (Document Nos. 30, 31, 32 and 33) and Plaintiff's response thereto, it is hereby ORDERED that, for the reasons set forth in the accompanying Memorandum, the Motions are GRANTED.

IT IS FURTHER ORDERED that Counts I, II and III of Plaintiff's Amended Complaint are DISMISSED WITH PREJUDICE.

IT IS STILL FURTHER ORDERED that JUDGMENT is ENTERED in the above action in favor of Defendants and against Plaintiff.